HARRY APPLESTEIN ᴇᴛ ᴀʟ. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE CITY ᴇᴛ ᴀʟ.

[No. 18, October Term, 1928.]

*Decided November 16th, 1928.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Sloan, JJ.

*Wirt A. Duvall, Jr.,* and *William H. Maynard,* for the appellants.

*Lindsay C. Spencer, Assistant City Solicitor,* with whom was *A. Walter Kraus, City Solicitor,* on the brief, for the Mayor and City Council and others, appellees.

*Arthur L. Jackson,* for Albert B. Barker, appellee.

42

OFFUTT, J., delivered the opinion of the Court.

This appeal grows out of a protracted and bitter controversy over the location of a drug store and a grocery store in a building at the northwest corner of Gwynn Oak and Oxford Avenues in Baltimore City, and involves the following facts:

The building is a two-story brick and tile structure, the first floor of which is adapted for store purposes while the second story is divided into apartments. It is owned by Harry Applestein and Rena Applestein, his wife, who on November 8th, 1927, applied to the buildings engineer of Baltimore City, also referred to as the zoning commissioner, for permission to use the first floor of it for two stores, one a drug store and one a grocery store. In ordinary course the application was considered, approved, and a permit authorizing the location of the two stores on the property granted. Thereupon the Howard Park Improvement Association and Albert E. Barker appealed from the decision of the buildings engineer to the board of zoning appeals of Baltimore City. That body, on December 13th, 1927, without having heard any testimony, and without assigning any reason for its action, reversed the order of the buildings engineer, and disapproved the permit. The applicants then filed in the Baltimore City Court a petition for a writ of mandamus against the buildings engineer, and the Mayor and City Council of Baltimore, in which, after alleging the facts to which we have referred, they said: "That the action of said board of appeals was arbitrary, unreasonable and without any just basis, and that said board took such action without producing any witnesses to furnish any substantial reason for such action or without any evidence of any kind before it that would furnish the basis of such action, and that such action was in violation of said Ordinance 825." Upon those facts they prayed the court to issue the writ of mandamus "against the defendants ordering and compelling them or any of them to issue to your petitioners a permit to use the property as requested in accordance with the terms of Ordinance No. 825 above referred to." Later, the board

of zoning appeals and Albert E. Barker, a protestant, were joined as defendants, a demurrer to the petition was filed and overruled, answers were filed by all the defendants but Barker, testimony was taken, the case was argued and, on March 31st, 1928, the petition was dismissed. From that order this appeal was taken.

While the issue raised by the pleadings in the mandamus proceeding was simple and direct, to wit: whether the board of zoning appeals had arbitrarily and without any lawful reason denied appellants' application, the evidence adduced in the Baltimore City Court took a wide range and covered many collateral and wholly irrevelant matters, such as the good faith of the applicant in procuring the introduction of a certain ordinance of the Mayor and City Council of Baltimore, the fact that his privies in title had made other applications of the same character for the same property which had been refused, and whether the building itself had been erected in compliance with the permit issued therefor. To review all of this evidence would be quite idle, and reference will be made to only so much of it as is needed to indicate the nature of the controversy, and explain the issues.

The land on which the building stands was formerly owned by one Haskel Feldman, who, on January 27th, 1926, filed an application in the office of the buildings engineer for a permit to erect on it a building to be used for a drug store and a grocery store. Residents of Howard Park protested against the issuance of the permit, and it was refused on March 20th, 1926. On April 15th, 1926, Feldman filed another application which was substantially the same as the first. Again there was a protest and again the permit was refused. He then appealed to the board of zoning appeals, which also refused the permit, and then to the Baltimore City Court, which affirmed the action of the board of zoning appeals, and there the matter rested until October, 1926. During or shortly after that month Ordinance 896 was introduced in the city council of Baltimore, authorizing Harry Applestein, Feldman's son-in-law, to erect a two story brick building for use as an apartment house and store property

on the lot formerly owned by Feldman at the northwest corner of Gwynn Oak and Oxford Avenues, and that ordinance eventually was adopted, approved on November 20th, 1926, and, on December 1st, 1926, the property was conveyed to Applestein and his wife by Ida Feldman, who had acquired it from her husband.

About the middle of December, 1926, Applestein began work on the building, which was immediately noted by officials of the Howard Park Improvement Association, who promptly procured the introduction of an ordinance to repeal Ordinance No. 896, which was also passed, and, on February 5th, 1927 approved. Applestein then filed a bill in Circuit Court No. 2 of Baltimore City to restrain the operation of the repealing ordinance, and that bill was dismissed on the ground that Feldman had induced a member of the council to introduce the ordinance by falsely informing him that there was no opposition to it, and had thereby committed a fraud. On March 30th, 1927, Applestein applied for permission to use the property for four apartments, a permit authorizing that use was issued, and the work of erecting the building was resumed. During the progress of the work Applestein was continually harried by the improvement association, which complained that he was departing from the plans approved for the erection of an apartment house, and was actually constructing a building which could be used for stores. Their apprehensions were probably well founded, for, on June 6th, 1927, Feldman procured the introduction of still another ordinance in the city council to secure permission to use the property for store purposes. The council referred the matter to the zoning board "for advice" and when that board disapproved the ordinance, it was defeated. There the matter again rested until the application involved in this appeal was filed.

It is apparent from a reference to these many, intricate, and confused proceedings, extending over a period of nearly three years, and involving, as they do the legislative, judicial, and administrative branches of the city government, that they have arisen from a determined effort on the part of the ap-

pellants to locate an ordinary chain grocery store and an ordinary drug store on their property on Gwynn Oak and Oxford Avenues, and an equally determined effort on the part of certain residents of that neighborhood to prevent them from doing so. That they had the right to use their property for the purposes contemplated, so long as such use did not substantially menace the public health, security, or morals, or create hazards from fire or disease, is declared by the ordinance. The engineer of buildings and the board of zoning appeals, therefore, in dealing with appellants' application for a permit, were strictly limited by the ordinance, from which they derive such authority as they have, to determining whether the proposed use would create a hazard from fire or disease, or would menace the public security, health, or morals, and unless they affirmatively found, after a fair and actual consideration of all relevant facts, that it would have such an effect, the appellants were entitled to have the permit for which they applied issued to them.

As has been stated, appellants in their petition charge that the board of zoning appeals, in refusing the permit, acted arbitrarily, unreasonably, and without evidence of any kind before it, and in their brief they charge that the "real reason" for the board's action was an attempt to keep alive certain provisions of the zoning ordinance which were held by this court to be invalid. So that the major questions presented by the appeal are (1) whether, assuming that the board of zoning appeals did exceed its powers in refusing appellants' application, a petition for a writ of mandamus will lie in this case, and (2) whether in fact the act of the board was *ultra vires* and void.

It is fundamental that the writ will not lie if the appellants have any other adequate and convenient remedy, *George's Creek Coal, etc., Co. v. Allegany County Commrs,* 59 Md. 255; *Legg v. Annapolis,* 42 Md. 203; *Booze v. Humbird,* 27 Md. 1; *State v. Graves,* 19 Md. 351, 81 Am. Dec. 639; 38 C. J. 559; and it is generally held that the right to have the facts upon which the petition for the writ is based reviewed upon appeal is a sufficient remedy, and that

one who fails to take advantage of it is not entitled to the writ of mandamus. 38 *C. J.* 565; *State etc. v. County Commrs.,* 46 Md. 621. And while there is authority for the proposition that, where the remedy by appeal will result in unreasonable delay, or, as a result of circumstances peculiar to the case, will occasion substantial loss or damage, that the writ may issue, it is inapplicable here, because the utmost relief that could be obtained through the remedy by mandamus would be to require the zoning board of appeals to perform the duties imposed upon it by law. And the appellants can obtain that relief as speedily by filing a new application for a permit, for it cannot be assumed that public officials will not fairly and adequately discharge the duties of their respective offices. The real question, then, is whether the appellants could have appealed from the decision of the zoning board of appeals to the Baltimore City Court.

The prayer of the petition asks that the writ issue to compel the defendants, "or any of them" to issue a permit authorizing the appellants to use their property for the purposes stated in the petition. But obviously, unless the ordinance under which the application was made is itself invalid and void, the court would not be authorized to grant that relief until after the applicant had exhausted all the remedies open to him under the ordinance, and the permit had been refused as a result of the refusal of the agencies empowered to deal with his application to consider it at all, or as the result of some unlawful or *ultra vires* act on the part of such agencies in dealing with it. The validity of the ordinance is conceded by the appellants, and, for the purposes of this opinion, will be assumed. And since the buildings engineer granted the permit, and the zoning board of appeals did actually consider the application, the specific complaint of the appellants was that that board acted *ultra vires* in disapproving it. Under the ordinance the buildings engineer was required to

"grant permits unless the proposed use of buildings or structures, or changes of use, would create hazards from fire or disease, or would menace the public secu-

rity, health or morals, and in determining whether any proposed use of buildings or structures or change of use would create hazards from fire or disease, or affect the public security, health or morals, the building engineer and the board of zoning appeals on appeal shall give consideration to the following facts in so far as they or any of them may relate thereto:

"(a) The character and use of buildings and structures adjoining or in the vicinity of the property mentioned in the application;

"(b) The number of persons residing, studying, working in or otherwise occupying buildings adjoining or in the vicinity of the property mentioned in the application;

"(c) The location, kind and size of surface and subsurface structures in the vicinity of the property mentioned in the application, such as water mains, sewers and other utilities;

"(d) Traffic conditions;

"(e) Materials of a combustible, explosive or inflammable nature to be sold, stored or kept on the premises."

So that the board of zoning appeals and the buildings engineer, in respect to the granting of buildings or use permits, had no power to refuse such permits unless it appeared from actual and substantial evidence of some character that the proposed use would create hazards from fire or disease, or would menace the public security, health or morals. Necessarily the board of zoning appeals derives all of its powers from the ordinances creating it and prescribing its duties, and except as granted by such ordinances it has no powers. Any order or decision it made, or any action it took, not within the terms of the grant, are therefore *ultra vires* and void; since it had no power to refuse the permit except upon the grounds stated in the ordinance, if it refused it for any other reason, its act was *ultra vires* and unlawful. Moreover, since the burden of supporting its refusal rested upon it, it was bound to show reasons sufficient to support the authority it exercised, for, as was said

in *Boarman v. Patterson,* 1 Gill, 381: "Where a special limited jurisdiction, distinct from and not embraced by its general jurisdiction, is conferred by act of assembly on any tribunal, its power to act, as it has done, must appear upon the face of its proceedings." In *Dorsey v. Dorsey,* 28 Md. 394, the court in effect said much the same thing, and in *Kane v. State,* 70 Md. 546, it added that "this maxim, *omnia praesumuntur rite esse acta,* does not apply to inferior courts, and proceedings by magistrates, or others, acting judicially under special statutory powers, so as to give jurisdiction. In all such cases, every fact required by the statute to give jurisdiction must appear on the face of the proceedings, either by averment, or by reasonable intendment. *Boarman v. Israel,* 1 Gill, 372, 381; *Swann v. Cumberland,* 8 Gill, 150. But if it appear that jurisdiction was obtained, both of the person and subject matter, and that such jurisdiction has not been exceeded, the validity of the judgment rendered will not be affected by the fact that there may have been irregularities and want of form in the proceeding upon which the judgment is founded." These cases, it is true, dealt with the acts of judicial officers acting under a special limited statutory jurisdiction, but the reasoning upon which they rest applies with even greater force to the acts of an official or board exercising at least *quasi* judicial powers. For the rule that the acts of public officials done in the performance of ministerial or administrative duties will be presumed to be valid and regular (*Gregg v. Pub. Serv. Commn.,* 121 Md. 1), has no application to a case where the effect of the act is to deprive a citizen of his property or vested rights. 22 *C. J.* 141. The exemplification of that exception to the general rule was thus stated in *Polk v. Rose,* 25 Md. 160, where the court was dealing with a tax sale: "While the maxim of law *'omnia rite praesumuntur'* is appropriate only to judicial proceedings, no intendment in respect to the exercise of it is to be made in favor of a specially delegated power; so that every act, the performance of which is made a condition precedent to the validity of the acts of a special agent, whether appointed for a public or private purpose, must be

shown by proof. The onus is upon the purchaser at a tax sale, he must establish affirmatively that the officers acted strictly in conformity with the law. The acts of the officers are matters in pais; their existence is not made out by intendment but must be proved." And in *Knox v. Kearney,* 37 Nev. 393, where the court, referring to the acts of the acting state engineer of the State of Nevada and the water engineer of the Muddy River water district, said: "Presumptions are not to be entertained in favor of a public official to overthrow the allegations of a complaint, in a case such as this, where, if his acts were authorized at all, it was under a naked statutory power, and apparently had the effect of divesting a citizen of a valid property right. *Kean v. Cannovan,* 21 Cal. 292, 82 Am. Dec. 738; *Watkins v. Havighorst,* 13 Okl. 128, 74 Pac. 318." See also *Fort Smith v. Dodson,* 51 Ark. 447, 4 L. R. A. 254, which involved the right of the municipality to sell an impounded animal.

But aside from these cases, common reason supports the rule, because under our system of government the legislature can neither directly nor mediately delegate to any official or group of officials the power to deprive the citizen of his property, or of valuable vested rights, arbitrarily and without any reason which the law recognizes as substantial and valid. And where any act of such an agency does summarily deprive the citizen of his property or rights, it is essential to its validity that the reason for it should appear.

In this case not only did the board of zoning appeals disapprove the permit without assigning any reason for its action, but it is plainly manifest from an examination of the evidence, given by members of the board at the hearing of the petition in this case, that their action was not based upon the fact that the proposed use would create hazards from fire or disease, or would menace the public morals, health, or security, but was based upon their objection to the commercial use by the applicants of property in a residential neighborhood. For while they expressed their conviction that the use of the property for an ordinary corner drug store and a chain grocery would create hazards from fire or disease, they ad-

duced no tangible or comprehensible reason for that conclusion. And in view of the fact that it was admitted that the building itself was "fire safe," and of the further fact that thousands of similar stores are found all over the city, in the suburban as well as in the most densely populated portions thereof, and in residential as well as in commercial sections, it would have been difficult for them to have done so. It is true that every occupation of a building, and indeed the mere location of a building, does increase to some extent hazards from both fire and disease, but since there cannot be a city without buildings, and since stores are necessary to the convenience of those who occupy them, such risk as there is is an inevitable incident of the growth and development of a great city. But to permit any public agency in its uncontrolled discretion to forbid a use of property in one block because it would create hazards from fire or disease, and permit an identical use in another block similar in all respects to the first, because it would not create such hazards, would be to delegate to it the power to deprive the citizen of his property and vested rights without due process of law. *Stubbs v. Scott,* 127 Md. 87; *Goldman v. Crowther, supra.* Ordinance 825, under which the application in this case was made, recognizes that principle and gratifies it, in limiting the discretion of the board of zoning appeals, by making its power to refuse a permit depend upon the existence of definite and clearly described conditions, and unless those conditions exist, the power does not exist. And for that reason Ordinance 522, which in respect to that question was similar to Ordinance No. 825, was approved in *Tighe v. Osborn,* 150 Md. 452. But the limitations by which the Mayor and City Council so carefully restricted and confined the powers of the zoning board of appeals, would be wholly nugatory and ineffectual, if that body were allowed to set them aside and disregard them at will whenever, for reasons not recognized by the ordinance, the exigencies of a given case in their judgment made it inexpedient to recognize them.

But conceding that to be true, nevertheless the appellants are not entitled to relief in this proceeding, if they had the

right to appeal from the decision of the zoning board of appeals to the Baltimore City Court. For as we have stated, the right to the writ of mandamus does not exist where there is another adequate and convenient remedy at law.

To determine whether such a right does in fact exist in this case involves a review of the history of zoning legislation in Baltimore. The term "zoning" has come to have a technical and artificial meaning, which is different from its literary and etymological significance. And while in its literary sense it signifies a belt or girdle more or less symmetrical in outline, it is also used to describe the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some degree to serve the interests of the whole territory affected by the plan. In that sense, zoning in Baltimore began with the adoption of Ordinance 922, approved on May 19th, 1923, which submitted a comprehensive plan for zoning the City of Baltimore, according to the use, height, and area of buildings and the land adjacent to them.

That ordinance provided that no building should be altered or constructed until the inspector of buildings issued a permit therefor, and he was only authorized to issue such permits in cases where the design and proposed use of the buildings conformed to the provisions of the ordinance. It also provided for an appeal from his decision on any application for such a permit to the zoning board of appeals, and a further appeal from the decision of that board to the Baltimore City Court. In *Goldman v. Crowther, supra,* on February 3rd, 1925, the use provisions of the ordinance were stricken down, but the provisions relating to an appeal to the Baltimore City Court were, in so far as they related to questions of a justiciable character, upheld. The court in that case following an intimation in *State v. Rutherford,* 145 Md. 163. The invalid sections of the ordinance appear never to have been repealed. Baltimore City Code, art. 49, pars. 2-8. But on February 9th, 1925, Ordinance 334 was adopted by the Mayor and City Council of Baltimore. Whilst

that ordinance declared that it was "in addition to, and not in substitution for" any existing ordinances, and while it was not strictly speaking a zoning ordinance, it was obviously intended as a substitute for the invalid sections of Ordinance 922, for, while it did not undertake to zone the city, it did purport to regulate the use of buildings therein, and it utilized the same administrative machinery provided by that ordinance. Ordinance 334 was also held to be invalid in an opinion filed in *Tighe v. Osborne,* 149 Md. 349, on December 10th, 1925, and on December 14th, 1925, Ordinance 522, regulating the use of lands, buildings and structures in the City of Baltimore, was passed. That too provided that it was in addition to and not in substitution for existing ordinances, but just as Ordinance 334 was manifestly intended as a substitute for the invalidated sections of Ordinance 922, so Ordinance 522 was intended as a substitute for Ordinance 334, which had been declared to be unconstitutional and void, and, so far as any repeal was necessary, operated as a repeal of that ordinance. Then on October 1st, 1926, Ordinance 825 was adopted as a substitute for Ordinance 522, and by it, that ordinance, Ordinance 334, and other ordinances and parts of ordinances inconsistent with Ordinance 825, were expressly repealed.

Ordinance No. 922 required that application for use permits should be made to the inspector of buildings of Baltimore City, also called the zoning commissioner, and it provided (1) for an appeal to the zoning board of appeals from any order, requirement, decision or determination of the zoning commissioner, and (2) from any order, requirement, decision or determination of the zoning board of appeals to the Baltimore City Court (section 22). In view of the comprehensive character of the language used in granting that right of appeal, extending as it did to any order or act of the board of zoning appeals, it became unnecessary to repeat the grant in speaking of the several grounds upon which a permit might be refused, so that that general provision covering every order, requirement, decision or determination of the zoning commissioner or the zoning board

of appeals, passed, done or promulgated in the administration of the ordinance, was the only provision for such appeals which that ordinance contained. Ordinance 334, however, contained a specific provision for appeals to the board of zoning appeals from the zoning commissioner, and from that board to the Baltimore City Court, which differed from the general right of appeal found in Ordinance 922, in that, while that ordinance provided that the Baltimore City Court should hear the case *de novo,* Ordinance 334 provided that the court should only pass upon issues of law. Ordinance 522 tended to enlarge the jurisdiction of the Baltimore City Court, and specifically enumerated its powers upon such appeals. Ordinance 825 expressly repealed those two ordinances, but omitted any reference to an appeal from the board of zoning appeals. Whilst the provisions of Ordinances 334 and 522, relating to appeals to the Baltimore City Court, were to some extent inconsistent with paragraph 22 of Ordinance 922, and may have operated as an implied repeal of that section, in so far as it may have granted a right of appeal from the action of the board of zoning appeals upon applications for use permits, that question does not arise in this case, because Ordinance 334 was by this court held to be unconstitutional. Ordinance 825 expressly repealed both of those ordinances, and "it is a common law rule of statutory construction that when a repealing statute is itself repealed the first statute is revived, without any formal words for that purpose, in the absence of a contrary intention expressly declared or necessarily to be implied from the enactment of provisions conflicting with those of the law which would otherwise be revived; and it matters not whether the repeal in either case be by express language or by implication." 36 *Cyc.* 1099. While in our opinion that rule is applicable to the facts of this case, we are not to be understood as holding that it applies to statutes which repeal and re-enact with amendments older statutes.

Ordinance 825 expressly grants to any applicant or interested person the right to appeal to the board of zoning appeals from the decision of the buildings engineer to whom

applications for use permits must first be made, and the board of zoning appeals referred to in that ordinance is the same board which is constituted and described in Ordinance 922, and the buildings engineer is the same person and exercises the same functions as the official described in the latter ordinance as the zoning commissioner. When therefore that ordinance in express terms provides that "any person or persons who may be dissatisfied with any order, requirement, decision or determination of said board of zoning appeals, in which he or they are in any manner interested, may within ten (10) days after the date of said order, requirement, decision or determination, appeal therefrom by petition to the Baltimore City Court, praying said court to review the same, and thereupon said court shall pass an order setting such appeal for hearing within ten (10) days from the date of the filing of said appeal, and requiring the said board of zoning appeals to produce in court on the day fixed for said hearing all papers, documents and memoranda relating to said order, requirement, decision or determination, from which said appeal is prayed, and the said Baltimore City Court shall hear said case *de novo,* and pass such order in the premises as it may deem right and proper. Such appeal may be taken also by an officer, department, board or bureau of the municipality, within ten (10) days as above provided,"—it covers appeals from the decisions of the board of zoning appeals made in connection with applications under Ordinance 825 as well as applications under Ordinance 922.

For while the two ordinances differ in this, that Ordinance 825 regulates the uses of buildings and structures throughout the entire city, and Ordinance 922 regulates the height of buildings and the area of yards, courts and open spaces about them, according to their location in certain zones or districts in the city, yet the two have this common purpose, the protection of the public health, morals, and security in Baltimore City, by regulating the construction, alteration, and use of buildings and structures therein, and may therefore be considered as *in pari materia.* 36 *Cyc.* 1147. *Billingsly v. State,* 14 Md. 369; 4 *Words & Phrases,* First

Series, 3478; 2 *Words & Phrases,* Second Series, 991. As stated in *Sales v. Barber Asphalt Co.,* 166 Mo. 671: "Thus the rule *in pari materia* is applicable here. 'All consistent statutes relating to the same subject, and hence briefly called statutes *in pari materia,* are treated prospectively, and construed together as though they constituted one act. This is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session, or on the same day.' *Suth. St. Const.,* sec. 283. And 'a statute must be construed with reference to the system of which it forms a part. And statutes on cognate subjects may be referred to, though not strictly *in pari materia.*' *Id.,* section 284." Applying those principles to the two ordinances before us, we have no doubt that the provision of Ordinance 922, allowing an appeal from "any" order or determination of the zoning board of appeals, applies to and covers any order, requirement, decision or determination of that board upon any appeal to it from any order or decision of the engineer of buildings relating to any application made to him for a permit under Ordinance 825.

And that must have been intended by the city council, for we cannot suppose that, with nothing to indicate such an intention, they intended to grant such appeal in respect to applications affected by the height and area regulations of Ordinance 922, and to deny them in respect to applications affected by the use provisions of Ordinance 825. But it is more reasonable to assume that, since they knew of the general provision in respect to appeals from the board of zoning appeals in Ordinance 922, they deemed it unnecessary to repeat those provisions in Ordinance 825, because they believed that the right of persons interested to appeal from decisions of the zoning board of appeals, acting on applications under Ordinance 825, was protected by Ordinance 922, and that conclusion is strengthened, when it is noted that Ordinance 922 restricts appeals to the zoning board of appeals to cases arising under "this ordinance," while there is no such restriction in respect to appeals from that board.

And while Ordinance 825 makes no provision for appeals from the board of zoning appeals, it does provide for appeals to that board.

And since the appellants had the right to appeal to the Baltimore City Court from the decision of the board of zoning appeals and failed to exercise it, and since that remedy was adequate and convenient, it follows, from what has already been said, that the petition of the appellants for the writ of mandamus was properly dismissed, and the order appealed from will be affirmed.

*Order affirmed.*