# BRUCE ALAN BINGMAN *v.* STATE OF MARYLAND

[No. 111, September Term, 1978.]

*Decided April 25, 1979.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Martha Weisheit, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellant, Bruce Alan Bingman (Bingman), was convicted on June 6, 1978, of distribution of a controlled dangerous substance, phencyclidine, in violation of Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 286 (a) (1). His trial was before a judge sitting without a jury. He presents two questions to us, (1) "Was the evidence sufficient to sustain the conviction?" and, (2) "Did the trial judge err in considering [Bingman's] juvenile record at sentencing?" Counsel raised the issue of the sufficiency of the evidence "[a]t [Bingman's] express request . . . ." We granted the writ of certiorari because of the importance of construing the statute to which reference is made in the second issue. We shall set forth relevant facts as we consider each question. We shall affirm.

## 1. Sufficiency of the evidence

Evidence was adduced that on the night in question a State trooper saw Bingman in a blue Volkswagen. As the trooper pulled alongside, Bingman asked him if he wanted to buy a "can of flakes." The trooper said this was drug jargon for phencyclidine. The trooper expressed interest. Bingman's companion then asked the trooper to follow him to his apartment. At that point Bingman told the trooper "that the flakes were good and he knew [the trooper] would like them." Bingman's companion in Bingman's presence removed a plastic bag containing a green leafy substance from its place of hiding and turned it over to the trooper for a monetary consideration. The contents were identified by laboratory examination as phencyclidine. The trooper also testified that

while the purchase was taking place Bingman advised him "how good the PCP was and that there was . . . more of the same and all that . . . ." The trooper claimed that Bingman suggested that he "smoke some of it right there to see if [the trooper] liked it." Bingman presented counter testimony.

In *Garrison v. State,* 272 Md. 123, 321 A. 2d 767 (1974), Judge O'Donnell said for the Court:

> In reviewing the sufficiency of the evidence to sustain a conviction in a criminal case we do not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, *State v. Devers,* 260 Md. 360, 272 A. 2d 794 (1971), but merely decide whether there was evidence, or probable inferences to be drawn from the evidence, upon which the trial court could find the defendant guilty beyond a reasonable doubt. *Wilson v. State,* 261 Md. 551, 276 A. 2d 214 (1971); *Drouin v. State,* 222 Md. 271, 160 A. 2d 85 (1960).
>
> "Possession" is defined by Code (1957, 1971 Repl. Vol.), Art. 27, § 277 (s), to mean "the exercise of actual or constructive dominion or control over a thing by one or more persons." The statute recognizes, as we held in *Rucker v. State,* 196 Md. 334, 340, 76 A. 2d 572, 574 (1950), that such possession may be joint. [*Id.* at 128.]

There clearly was legally sufficient evidence adduced in this instance to warrant the conviction of Bingman.

### 2. The juvenile record

At sentencing Bingman's pastor testified on his behalf. Among other things, he said:

> I've been visiting him at least twice a week since he's been incarcerated. We have had an occasion to talk with each other about the seriousness of what he's done. He's also told me that it was a dumb thing.

He's very concerned about his wife. I married them; I counseled with them, knew that Bruce was having some problems. Bruce voluntarily left the county, disassociated himself for a time from all the people that he had been with, and now he's requested or is requesting that he be allowed to rejoin his wife, take the job that he left, be able to move up to Upper Marlboro and start life all over again, and I honestly believe that Bruce is very, very sincere in his attitude and if you have mercy on him and allow him to go free, I don't believe you will ever see Bruce back in this courtroom again.

In response to a question from the trial judge, he testified that he had "known [Bingman] for almost eight years." He was then asked whether he was "aware that back in 1973 [Bingman] was placed on probation as a juvenile for breaking and entering ... [a]nd that a mere twenty-six days later [he was] placed on probation again for breaking and entering and larceny, possession of stolen goods." The minister indicated his knowledge of this fact as well as knowledge of certain subsequent criminal charges. This colloquy relative to "probation as a juvenile for breaking and entering" is the foundation upon which Bingman's contentions here rest.

Code (1974, 1977 Cum. Supp.) § 3-824, Courts and Judicial Proceedings Article, provided in pertinent part at the time here applicable:

(a) An adjudication of a child pursuant to this subtitle is not criminal conviction for any purpose and does not impose any of the civil disabilities ordinarily imposed by a criminal conviction. ...

(b) An adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child in any criminal proceeding prior to conviction, or in any other proceeding.

(c) Evidence given in a proceeding under this subtitle is not admissible against the ·child in any other proceeding in another court, except in a criminal proceeding where the child is charged with

perjury and the evidence is relevant to that charge and is otherwise admissible.

Bingman seizes upon that portion of subsection (a) indicating that an adjudication of a child "is not criminal conviction *for any purpose*" (emphasis supplied by Bingman) and subsection (c) specifying that "[e]vidence given in a proceeding under [the Juvenile Causes] subtitle is not admissible against the child in any other proceeding in another court . . . ." He notes, "These provisions are in keeping with the expressed purpose of the juvenile proceedings subtitle '[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior,'" referring to § 3-802. From this he argues that consideration by the trial judge of his prior juvenile record was improper and he is entitled to a remand for resentencing.

The first Maryland juvenile statute which was applicable to most of the counties of Maryland was enacted by Chapter 797 of the Acts of 1945. *Matter of Anderson,* 272 Md. 85, 96, 321 A. 2d 516 (1974), *cert. denied,* 421 U. S. 1000 (1975). Section 48K of that act, later found in Code (1957) Art. 26, § 61, provided in pertinent part:

> No adjudication by the judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication. The proceedings with reference to a child or any evidence given before the judge shall not be admissible as evidence against the child in any case or proceedings in any other court.

Its similarity to the present juvenile statute will be noted.

In *Bullock v. Director,* 231 Md. 629, 631, 190 A. 2d 789 (1963), an alleged defective delinquent took exception to the admission into evidence of "his past record as shown by the records of the juvenile and magistrate's courts." To this, Judge Prescott said for our predecessors, "Evidence of prior anti-social behavior is admissible in cases of this nature. *Height v. State,* 225 Md. 251, 170 A. 2d 212 [(1961)]." In *Rice*

*v. Director,* 238 Md. 137, 207 A. 2d 616 (1965), the Court had yet another alleged defective delinquent before it. There Judge Horney said for the Court:

> Although § 61 of Art. 26 does provide that adjudication of the status of a child (in a juvenile cause) shall not operate to impose any civil disabilities and that the child shall not be deemed thereby to be a criminal, there is no reason why, as was pointed out in *Bullock v. Director,* 231 Md. 629, 190 A. 2d·789 (1963), that evidence of prior anti-social behavior of a juvenile may not be considered in evaluating his status as a defective delinquent. [*Id.* at 139-40.]

In this instance Bingman completely overlooks § 3-824 (b) which at the time here pertinent provided that a prior adjudication and disposition of a child was "not admissible as evidence against the child ... in any criminal proceeding *prior to conviction ....*" (Emphasis added.) The predecessor of § 3-824 (b) (1) was Code (1957, 1973 Repl. Vol.) Art. 26, § 70-21 which provided that no disposition in a juvenile matter should be admissible against such an individual "except after conviction of a crime in proceedings to determine his sentence." It should be immediately perceived that this language is consistent with that found in present § 3-824 (b). When the General Assembly enacted Chapter 2 of the Acts of the First Special Session of 1973, § 70-21 was placed in Code (1974) § 3-834, Courts and Judicial Proceedings Article, ·which said:

> The proceedings in the juvenile court regarding a child are not admissible as evidence against him in criminal proceedings, prior to conviction, unless the charge is perjury.

To this the Revisor's Note states in pertinent part, "The only ... changes made are in style." The statute relative to juveniles was extensively revised by Chapter 554 of the Acts of 1975. It was at that time that § 3-824 was enacted, taking the place of what had been § 3-834.

Bingman was sentenced on July 10, 1978. The further revision of § 3-824 made by Chapter 814 of the Acts of 1978, effective July 1, 1978, once again specifies that a juvenile's adjudication is not admissible as evidence against him in any criminal proceeding "prior to conviction . . . ."

The General Assembly is presumed to be fully familiar with the holdings of this Court and to have acted accordingly. *Supervisor v. Southgate Harbor,* 279 Md. 586, 591-92, 369 A. 2d 1053 (1977); *Bd. of Ex. of Land. Arch. v. McWilliams,* 270 Md. 383, 387, 311 A. 2d 792 (1973), and cases there cited. If it disagreed with the interpretation placed by our predecessors upon a similar statute, it has had ample time and opportunity to make a change which would spell out that disagreement.

That which came before the court in this instance was *subsequent* to and not *prior* to conviction. Actually, what happened here in effect was that after Bingman's pastor had testified as to his opinion of Bingman the trial judge was really asking him whether when he said those good things relative to Bingman he recognized that as a juvenile he had done certain acts which did not reflect favorably upon him.

Considering the statute as a whole, recognizing the context in which the trial judge's comments or questions were framed, noting that this came subsequent to conviction, and considering the prior holdings of this Court, we perceive no error.

> *Judgment affirmed; appellant to pay the costs.*