Lois LANGE, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 22699.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 1970.

Decided March 22, 1971.

As Amended April 16, 1971.

Mr. Robert C. Maynard, Washington, D. C., with whom Mr. Ralph J. Temple, Washington, D. C., was on the brief, for appellant.

Mr. Gregory C. Brady, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Axel H. Kleiboemer, Asst. U. S. Attys., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty. at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

On June 28, 1968, a group of persons, all members of the Society of Friends and hereafter referred to as a Quaker group, came to Washington, D. C., to manifest their support of the Poor People's Campaign, then in progress in the nation's capital. Their activities led to the arrest of appellant, a member of the group, and in due course to her conviction for violation of the District of Columbia unlawful assembly statute, 22 D.C.Code § 1107 (1967). We overrule her contention that the Court of General Sessions lacked jurisdiction to try the case. We find that substantial constitutional questions are presented by the case. However we find that we can dispose of the case without deciding those questions—because we find the Government's proof fails to support the charge in the information that appellant blocked use of a public building. As to the Government's contention that appellant is guilty of an assembly that is unlawful because it interferes with an arrest, we observe both that this is a new charge not set forth in the information, and that it is not supported by the proof. Accordingly the conviction is reversed.

## I. Factual Background

Representatives of the Quaker group arranged to visit the offices of the Speaker of the House of Representatives and President of the Senate for delivery of petitions in support of the legislative goals of the Poor People's Campaign. A demonstration was scheduled for 3:00 p. m. at the east end of the Mall on First Street, N. W., between Maryland and Pennsylvania Avenues, and approximately 375 to 400 persons gathered there. At about 3:30 or 3:45 p. m., appellant and 33 others left the Mall and walked up the south walkway towards the west entrance of the Capitol until they arrived at the lower concrete terrace. There they sat down for a Quaker "meeting for worship" that lasted from 45 minutes to an hour.

Towards the end of the meeting for worship, members of the group saw another group of persons, members of the predominantly black Southern Christian Leadership Conference (SCLC), who were also taking part in the Poor People's Campaign, being placed under arrest by the Capitol Police on the upper terrace of the west front. Chief J. M. Powell, Chief of the Capitol Police, testified that the SCLC group was "singing and chanting, and they went into a sort of a snake dance, and it continued, and they were blocking the free passage of the area, and it was necessary to place that group under arrest." The Quakers, apparently feeling that they had been accorded "privileged treatment," and wishing to show their identification with the SCLC group, arose and walked up the walkway to the bottom of the west entrance stairway that leads to the upper terrace (where the SCLC group was being arrested). The stairway is divided into two 25-foot sections, north and south, by a divider. The police were bringing the arrestees down the northern half. The Quakers were singing as they approached the SCLC group. Chief Powell testified,

\* \* \* This was while the police were making an orderly arrest of the first [SCLC] group, and this group, al-

though they were warned not to interfere, and to stay back, they continued to come right over, and they came as close as possible, within two or three feet of the other group, and sat down in a circle there * * * just at the foot of the stairs, partly out in front of the steps, as near and as close as they could get to the vicinity of where they were processing these other people. (Tr. 7–8).

He further stated that the Quaker group "was occupying almost the entire 25 foot width of the northern section" of the stairs after they sat down. (Tr. 20).

However,

* * * of course, these stairs, at that time, was almost filled with the other [SCLC] group that was being arrested so that the addition of these people only contributed to the blockage of it. It was already blocked by the other group that was being arrested, and the addition of these people merely added to it. (Tr. 15).

Chief Powell announced to the Quakers that they were interfering with an arrest and impeding the sidewalk. He told them that they would be placed under arrest if they did not leave. The group sat down and all of them, including appellant, were arrested.

## II. *Prior Proceedings*

Upon her arrest, appellant was charged with violating the Capitol grounds anti-demonstration statute, 9 D.C.Code § 124. This charge was changed the following day to unlawful assembly in violation of 22 D.C.Code § 1107, set forth in note 17. In a motion to dismiss the information appellant contended that the Court of General Sessions did not have jurisdiction to enter a judgment under 22 D.C. Code § 1107. This motion was denied as was her motion for acquittal, made at the close of the Government's case, on the grounds that her conduct was protected by the First Amendment, and that the evidence was insufficient to show that she obstructed the free use of a public building. The court, sitting without a jury, found her guilty of unlawful assembly and imposed a $10 suspended sentence.

Her application for leave to appeal to the D.C. Court of Appeals pursuant to 17 D.C.Code § 301 (1967) was denied,[1] and an appeal to this court was allowed.

## III. *Jurisdiction of the Court of General Sessions*

The District of Columbia Unlawful Assembly statute, 22 D.C.Code § 1107 (1967) sets "a penalty of not more than $250 or imprisonment for not more than ninety days, or both. * * *" Appellant contends the criminal jurisdiction of the Court of General Sessions does not extend to a case where the maximum penalty may be both fine and imprisonment, since it is expressly limited by 11 D.C.Code § 963 (1967) to

(1) offenses committed in the District for which the punishment is by fine only or by imprisonment for one year or less.

She relies on District of Columbia v. Grimes, 131 U.S.App.D.C. 360, 404 F.2d 1337 (1968).

■■■ We disagree. The literal wording of the statute is a primary index but not the sole index to legislative intent. It cannot prevail over strong contrary indications in the legislative

1. It was first denied Aug. 14, 1968, Lois Lange v. United States, No. 3897 Original (D.C.C.A.). This court granted a petition for allowance of appeal, filed under 17 D.C.Code § 101, for "jurisdictional purposes" and remanded to permit the D.C. Court of Appeals to re-examine the petition to appeal in light of District of Columbia v. Grimes, 131 U.S.App.D.C. 360, 404 F.2d 1337 (1968). Lois Lange v. United States, No. 22,245 (D.C.Cir., Order dated December 2, 1968). On remand, the D.C. Court of Appeals again denied the application for allowance of appeal. Memorandum, January 23, 1969, Lois Lange v. United States, D.C.C.A. No. 3897 Original. We granted her second petition for allowance of appeal by order dated May 28, 1969.

history[2] or so as to command an absurd result.[3] We conclude that the statute does not negative jurisdiction of General Sessions for misdemeanors punishable by both fine and imprisonment.

The legislative history, which is set forth with enlightening care in the Government's brief, began with the law, passed 100 years ago, that established the police court, precursor of General Sessions, with jurisdiction of simple assaults and batteries "and all other misdemeanors not punishable in the penitentiary."[4] The courts quickly determined that the police court had jurisdiction, where the offense was not made punishable by imprisonment in the penitentiary, even though the punishment might add to the imprisonment—for less than one year—the mandate of a fine.[5] We pass over an 1891 amendment[6] and arrive at the codification of the laws of the District of Columbia that came to fruition in the Act of March 3, 1901, ch. 854, 31 Stat. 1189. Section 43 of this Act described the jurisdiction of the police court in language similar to that used in previous legislation, and section 934 provided: "When the punishment of an offense may be imprisonment for more than one year the prosecution shall be in the supreme court of the District [now the District Court]. When the maximum punishment is imprisonment for one year or less the prosecution may be in the police court." This 1901 law continued the legislative purpose of giving the police court (concurrent) jurisdiction of offenses punishable by imprisonment so long as the offense was not

serious enough for imprisonment in the penitentiary, which was provided for crimes punishable by imprisonment for more than one year.

The words "a fine only or" were added to Section 934 by Act of June 30, 1902, ch. 1329, 32 Stat. 537, and as there is no specific reference to this addition in the committee reports, all we have to go on is S.Rep.No.2, 57th Cong., 1st Sess. 1 (1901): "Almost all of the amendments suggested are made to correct clerical oversights; the object of most of the others is sufficiently shown by the amendment itself." We think the purpose is manifest—to correct an oversight. The giving of concurrent jurisdiction to the police court had been clearly enough established for those crimes that were punishable by detention, and had been defined in terms of whether maximum imprisonment was one year or less (and therefore not punishable in the penitentiary). That criterion did not take care of the cases of offenses punishable by fine only. The addition made it clear that such (obviously less serious) offenses might also be tried in police court. The effect of this revision on the 1901 Code was to clarify police court jurisdiction over three minor offenses which prescribed penalties of fines only.[7]

It would defeat the legislative purpose if the addition of "a fine only or" were considered to terminate the then widely understood jurisdiction of the police court (see note 5) over crimes permitting imprisonment up to one year, even though a fine could be imposed in addition.[8] Indeed, the construction contend-

2. United States v. Public Utilities Comm'n., 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).

3. 2 J. Sutherland, Statutory Construction § 4706 at 339–340 (3d ed. 1943).

4. Act of June 17, 1870, ch. 133, 16 Stat. 153.

5. United States v. Cross, 8 D.C. (1 MacArthur) 149 (1873) (petit larceny; $200 in fine or imprisonment in jail for up to six months or both).

6. In 1891 Congress provided a right to jury trial in police court to overcome the ruling in Callan v. Wilson, 127 U.S. 540,

8 S.Ct. 1301, 32 L.Ed. 223 (1888), that the police court had no jurisdiction to try offenses as to which there was a constitutional right to jury trial.

7. These offenses were: defacing of tombstones, § 850, 31 Stat. 1327; sale of guns without a license, § 857, 31 Stat. 1329; filling of mineral water bottles without the consent of the owner, § 878, 31 Stat. 1333.

8. A letter written by Hon. I. G. Kimbell, judge of the police court noted:
   "It frequently happens that a man is tried [in the police court] for several

ed for by appellants would transform this clarifying addition of the 1901 Code to cover a minor *casus omissus,* crimes punishable only by fine, into a drastic change which limited the jurisdiction of the police court to these three minor offenses.[9] The 1901 Code cannot, in the light of its legislative history, soundly be given such an absurd reading.

As to the current wording that appears in the 1963 revision of the District of Columbia Code, the revisors stated that "the purpose of this enactment is not to change substantive law, but to put that law in a form that will be more useful and understandable." [10] It cannot fairly be given a meaning materially changing the prior law.[11]

Appellants rely on District of Columbia v. Grimes, 131 U.S.App.D.C. 360, 362, 404 F.2d 1337, 1339 (1968). In *Grimes,* this court dealt with an area where its precedents had long delineated the prosecutorial authority of the Corporation Counsel on the one hand and of the United States Attorney on the other.[12] There was no legislative interposition to set a different course.

■ The issue now before us relates to the jurisdiction of the courts. The jurisdiction of the police court and its successors—the Municipal Court, the Court of General Sessions—to hear cases

arising under the many and typical misdemeanor statutes providing for both fine and imprisonment, has been assumed by all concerned with the administration of justice, in the judicial branch as well as the executive branch of the government. Our own decisions contain references assuming such jurisdiction,[13] and while these assume the jurisdiction without discussion, they certainly record judicial practice. While a judge or court may not boldly arrogate authority,[14] deference is accorded the established practice of the courts concerned when construing a statute relating to judicial administration, at least when no constitutional infirmities are involved.

■ The gears of government must mesh without awaiting final judicial precedent, and the officials concerned must construe the statutes they administer. When the practice they launch and continue is not unreasonable or contrary to ascertainable legislative intent the courts will give it weight in deciding statutory meaning. The principle authoritatively stated in Udall v. Tallman,[15] as to executive and administrative practice, applies with full vigor to practice of the judicial branch.

Sometimes a court that is driven to an interpretation of a statute at variance with general understanding will comment that if the situation needs correction, re-

---

offenses, as, for instance, larceny, assault, and carrying concealed weapons, in each of which the sentence may be one year or less."

For each of these misdemeanors the 1901 Code permitted fine in addition to imprisonment (see §§ 806, 827, 855, 31 Stat. 1322, 1324, 1328). The letter is incorporated in S.Rep.No.1267, 57th Cong., 1st Sess. 2 (1902).

9. Every other non-infamous offense related in the 1901 Code provided for fine, imprisonment, *or both.*

10. S.Rep.No.743, 88th Cong., 1st Sess. 4 (1963) ; H.R.Rep.No.377, 88th Cong., 1st Sess. 2 (1963).

11. Washington Building Services, Inc. v. United Janitorial Services, Inc., 122 U.S. App.D.C. 202, 352 F.2d 678 (1965).

12. Smith v. District of Columbia, 128 U.S.App.D.C. 275, 387 F.2d 233 (1967) ; United States v. Strothers, 97 U.S.App. D.C. 63, 228 F.2d 34 (1955) ; District of Columbia v. Simpson, 40 App.D.C. 498 (1913).

13. Fletcher v. McMahan, 73 U.S.App.D.C. 263, 265, 121 F.2d 729, 731, cert. denied, 314 U.S. 662, 62 S.Ct. 131, 86 L.Ed. 531 (1941) ; see also Tate v. United States, 123 U.S.App.D.C. 261, 265, 359 F.2d 245, 249 (1966).

14. Ellis v. United States, 135 U.S.App. D.C. 35, 416 F.2d 791 (1969).

15. 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

lief can be sought from the legislature. To the extent that this may be considered material we note that the jurisdiction of the Court of General Sessions has been extended to felonies by recent legislation reconstituting it as the Superior Court.[16]

## IV. Appellant's Substantial Constitutional Questions

On the merits this appeal presents substantial constitutional claims. Appellant challenges the validity of her conviction under 22 D.C.Code § 1107 (1967),[17] on several constitutional grounds—all interrelated with the basic assertion that her conduct may not be prohibited consistently with the guarantees of the First Amendment, including the right of peaceful assembly and the right to petition Congress for redress of grievances. There are interrelated contentions that 22 D.C.Code § 1107 is void on its face, because its broad reach interdicts protected conduct; that the statute is invalid as applied to the facts of this case, as limiting protected conduct; that the statute is invalid because its breadth permits discriminatory and selective enforcement that permits some protected assemblies and prohibits others, and constitutes a denial of equal protection and a deprivation of liberty without due process of law.

### Precedents Invoked

The principal precedents relied on by appellant are Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) and Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Edwards involved a breach of the peace statute used to convict a group of 187 students who marched to the grounds of their state capitol "loudly singing * *, while stamping their feet and clapping their hands," and refused to disperse when ordered to by the police. (372 U. S. at 233, 83 S.Ct. at 682). The Supreme Court held that this conduct constituted "peaceably expressing" their opinions and was protected by the First and Fourteenth Amendments.

The Cox ruling reversed the conviction of a group of about 2,000 Negro students who approached the parish jail to protest the arrest of 23 other Negro students who had participated in a protest against racial segregation. They stood five deep on the west sidewalk, across the street

---

16. District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 (Pub.L. No. 91–358, July 29, 1970).

17. "§ 22–1107. Unlawful assembly—profane and indecent language.

It shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street, avenue, alley, road or highway, or in or around any public building or inclosure, or any park or reservation, or at the entrance of any private building or inclosure, and engage in loud and boisterious talking or other disorderly conduct, or to insult or make rude or obscene gestures or comments or observations on persons passing by, or in their hearing, or to crowd, obstruct, or incommode, the free use of any such street, avenue, alley, road, highway, or any of the foot pavements thereof, or the free entrance into any public or private building or inclosure; it shall not be lawful for any person or persons to curse, swear, or make use of any profane language or indecent or obscene words, or engage in any disorderly conduct in any street, avenue, alley, road, highway, public park or inclosure, public building, church, or assembly room, or in any other public place, or in any place wherefrom the same may be heard in any street, avenue, alley, road, highway, public park or inclosure, or other building, or in any premises other than those where the offense was committed, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both for each and every such offense."

from the courthouse, occupying almost the entire block but not obstructing the street. They carried picket signs and sang hymns, and the jailed students responded by themselves singing. When Cox exhorted the students to "sit in" at uptown lunch counters, the sheriff first ordered dispersal, and then used tear gas for this purpose. The court reversed a conviction under a state "breach of peace" statute, similar in some respects to 22 D.C.Code § 1107, which barred congregation on a "public sidewalk" with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby when followed by failure to comply with an order of the police to disperse.

In *Cox* the Court held that under the circumstances disclosed by the record, Cox had been deprived of rights of free speech and free assembly in violation of the Constitution. The Court also held these constitutional rights unlawfully abridged by virtue of the unfettered discretion allowed local officials in enforcing a statute obstructing public passages. The Court noted, "City officials who testified for the State clearly indicated that certain meetings and parades are permitted in Baton Rouge, even though they have the effect of obstructing traffic, provided prior approval is obtained." (379 U.S. at 556, 85 S.Ct. at 465.) The Court struck down the conviction saying (Id. at 557–558, 85 S.Ct. p. 465):

> The situation is thus the same as if the statute itself expressly provided that there could only be peaceful parades or demonstrations in the unbridled discretion of the local officials.
>
> *    *    *    *    *    *
>
> *   *   * [I]nherent in such a system allowing parades or meetings only with the prior permission of an official is the obvious danger to the right of a person or group not to be denied equal

protection of the laws. [Citing cases] It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups either by use of a statute providing a system of broad discretionary licensing power or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute.

### Issue of Selective Enforceability

It is in the context of such precedent that we note that in the present proceeding appellant sought at trial to introduce certain evidence of arbitrary and selective enforcement by the Capitol Police of the various laws governing assemblies on the Capitol grounds. The Government objected that such evidence was irrelevant. The trial judge sustained the objection and barred a proffer of evidence, saying, "Selective enforcement is standard procedure." Defense counsel then sought a stipulation that such was the practice of the Capitol Police, and the judge replied, "The Court will take judicial notice of it, sir." (Tr. 44.) This was said before the prosecutor could reply. The prosecutor opposed the court's ruling and moved to strike the proffered evidence of which the court had taken judicial notice. This motion was dismissed.

The Government argues to this court that the trial judge's judicial notice was limited to the statute's selective enforcement and did not include evidence of unconstitutionally discriminatory enforcement. The latter, it claims, is not a proper matter for judicial notice. Appellant presses her contention of voidness on grounds of selective enforceability, and in support thereof has brought to our attention the opinion of Chief Judge Greene of the Court of General Sessions

in United States v. Nicholson,[18] finding that the Capitol grounds anti-demonstration statute, 9 D.C.Code § 124, under which appellant in this case was arrested, has been arbitrarily and unconstitutionally selectively enforced.

*Issue of Lack of Allegation Charging Appellant with Breach of Peace*

Finally, in regard to appellant's challenge of § 22–1107 as void on its face, we may recall that when we last considered this section, we noted that it is "a 71-year old disorderly conduct statute which was not at its birth a model of craftsmanlike drafting and which has certainly not improved with age." Williams v. District of Columbia, 136 U.S.App.D.C. 56, 59, 419 F.2d 638, 641 (1969) (en banc). There we were faced with an information under the statute's profane or indecent language clause, and we held that "an additional element that the language be spoken in circumstances which threaten a breach of the peace" would be necessary in interpreting the statute to save it from constitutional infirmity.[19] Following *Williams*, the District of Columbia Court of Appeals read the same qualifying language into that portion of § 22–1107 which is here in issue. Otherwise, the court said, the pure statutory language "would allow punishment of the members of a group of sightseers, tourists, or school children, who might innocently congregate and assemble on a public street in such a manner as to crowd, obstruct, or incommode the free use of the street." Adams v. United States, 256 A.2d 563, 564–565 (D.C.Ct. App.1969). Appellant therefore presses her claim that the information fails to state an offense, in view of the failure to contain the crucial breach of peace allegation.

*Government's General View of Case*

As appears from the foregoing comments, the case presents serious constitutional contentions by appellant. The Government claims that appellant was tried and convicted solely because of her conduct in obstructing passageways while protesting the arrest of others, conduct claimed to go beyond the peaceable expression of views. The Government apparently mounts a wholesale attack on the applicability of appellant's precedents, *Edwards*, *Cox*, and *Williams-Adams*, on the ground that in this case appellant was involved in obstructing access to a public building and interfering with arrest. On the selective enforcement problem, the Government recognizes that the action of the trial judge was on a basis it does not support but does not squarely face up to the problem whether his mistake, as they see it, has not imbedded a defect in the proceeding.

## V. *The Evidence Was Insufficient To Support a Conviction on the Information Issued Against Appellant*

In studying the record for the purpose of focusing meaningfully on the constitutional issues we have become convinced that the conviction must be reversed on a ground equally fundamental, that there is no evidence to support a conviction under the information herein, without regard to defects in the statute on which it is based. We determine to dispose of the case on that ground and to avoid decision of the serious constitutional questions presented. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345–348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

The Information charged that appellant congregated and assembled with others in and on the "West Front, U. S. Capitol;" and (1) engaged in loud and boisterous talking and other disorderly

---

18. No. 20210–69A *et seq.* (June 19, 1969), aff'd by the D.C. Court of Appeals, 263 A.2d 56 (Mar. 13, 1970). Chief Judge Greene's opinion is reprinted in 97 Wash. L.Rep.No.137, at 1213 (July 17, 1969).

19. 136 U.S.App.D.C. at 64, 419 F.2d at 646. We therefore directed that the information, which did not contain the necessary allegation, be dimissed.

conduct; (2) "and did crowd, obstruct and incommode the free use of a *said public building*" in violation of the Code. [Italics shows insertion into the form information.]

At the close of the Government's case the prosecutor sought to amend the information, in regard to item (2), "so as to allege that the defendant did block, obstruct, and incommode the free use of the foot pavement around the said public building." (Tr. 22.) Defense counsel objected, and the motion to amend was denied.

The proof presented by the prosecution established at most that appellant's group was involved in blocking the northern half of a single stairway into the Capitol. All the other entrances and stairways were unimpeded.

If the prosecution had established its own contention by meaningful proof we would still be left with the substantial question whether, and under what circumstances, an incidental blockage in the course of a demonstration of access to one entrance to a public building may be prohibited when substantial access has been retained for the public.

However, the Government's proof does not even suffice to show the blocking of a single entrance. Chief Powell testified that this stairway in question was already closed to the public, *by the police*, when they began arresting the SCLC group on the northern part of the stairway. Thus the Quaker group did not block the stairway; in Chief Powell's word, "It was already blocked by the other group. * * *" (Tr. 15.) The arrest of the SCLC group only blocked the northern half of the stairway. "[A]t the time this group joined them, to the best of my recollection, that southern half was clear." (Tr. 21–22.)

Somewhat disingenuously, the Government's brief asserts (p. 29) that "[t]he fact that their actions obstructed the 'free use' of the building is evidenced by the complaints of several tourists to Chief Powell that they could not use the stairway." But the record shows that Chief Powell testified that the four or five complaints were made before appellant's group ever approached the stairs. (Tr. 14). There was no proof to show that appellant's conduct obstructed the free use of the stairs, and her conviction cannot be sustained on this basis.

■■ The Government also seeks to uphold the conviction on the basis of the "disorderly conduct" paragraph of the information, it being argued on appeal that appellant was really engaged in obstructing an arrest. In the first place appellant was not charged with obstructing an arrest. Moreover, the Government's proof did not establish an obstruction. The evidence establishes that the Quaker group was careful not to intermingle physically with the arrested group. They came close enough to show their solidarity, but in the *Cox* case the protected conduct included a demonstration for the purpose of showing solidarity with arrested persons. It was not established that appellant's group came so close to the police and the members of the SCLC being arrested as to constitute an obstruction.

Appellant's motion for acquittal should have been granted.

Reversed.