**Marvin L. HOLT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–1185.**

District of Columbia Court of Appeals.

Argued En Banc April 4, 1989.

Decided Nov. 3, 1989.

---

Before ROGERS, Chief Judge, NEWMAN, FERREN, BELSON, TERRY, STEADMAN and SCHWELB, Associate Judges, and MACK, Associate Judge, Retired.*

BELSON, Associate Judge:

A jury convicted appellant Marvin Holt of the felony offense of threats, D.C. Code § 22–2307 (1988 Supp.).[1] On appeal, he challenged his conviction on several grounds and a division of this court voted to affirm. *Holt v. United States*, 547 A.2d 158 (D.C.1988), *vacated and reh'g en banc granted*, 552 A.2d 529 (1989). On rehearing en banc, the full court considers only his principal argument,[2] *i.e.*, that it was improper to charge him under the felony threats statute instead of the misdemeanor threats statute, D.C.Code § 22–507 (1981).[3] Appellant argues concurrently that the government, because it did not show an intent to extort on his part, failed to prove all of the elements of felony threats against him. He therefore urges this court to overrule its decision in *United States v. Young*, 376 A.2d 809 (D.C.1977), in which we rejected the contention that a specific intent to extort is a necessary element of a violation of the felony threats statute. We decline to overrule *Young*, and affirm.

Briefly, the facts underlying appellant's conviction are these. The complaining witness, Venita Clinton, was in the hallway of her apartment building locking her apartment door one morning when a man grabbed her from behind and placed a gun to her head. During the struggle that ensued, her pocketbook fell to the ground and at one point the gun struck her on the jaw. The assailant held the pocketbook for

Alan B. Soschin, appointed by the court, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., was on the opposition to the petition for rehearing en banc, and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, Judith Hetherton, John E. Stevens and Robertson T. Park, Asst. U.S. Attys., were on the brief for appellee.

---

\* Judge Mack was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on October 1, 1989.

1. Section 22–2307 provides:
   Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more than $5,000 or imprisoned not more than 20 years, or both.

2. For the division's treatment of appellant's other grounds for appeal, *see Holt v. United States*, 547 A.2d 158, 158 n. 2 (D.C.1988).

3. D.C.Code § 22–507 (1981) provides:
   Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than 6 months, or both, and, in addition thereto or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year.

a time but dropped it and ran away when a neighbor came out into the hall. Ms. Clinton gave the police a detailed description of her assailant. At the time of the assault, two neighbors saw a man matching that description running away from the apartment house toward the street where appellant lived.

In the early evening of the same day, Ms. Clinton was taking some things out of her car to bring into her apartment when a man who resembled her assailant of that morning walked toward her. She recognized the man's eyes. As he passed her, he did not stop but said "I'm gonna get you, bitch." Based on identifications by the complaining witness and the neighbors who had seen a man running away that morning, appellant was arrested and charged with armed robbery and felony threats.[4] A jury acquitted appellant of all but the threats charge.

■ In his petition for rehearing, appellant argues that his alleged conduct on the afternoon of May 24 did not violate the threats statute under which he was charged because there was no showing of intent to extort on his part. To support this argument he relies chiefly on a reading of the legislative history of the District of Columbia's felony threats prohibition favored by the dissenting judge in *Young*. *See id.* at 814–16. Tracking the *Young* dissent, he also contends that the disparity in potential sentence between the felony threats statute and D.C.'s simple threats statute, D.C.Code § 22–507 (1981), amounts to a violation of his eighth amendment rights. Given appellant's actual sentence, indeterminate commitment of up to six years under the Federal Youth Corrections Act (FYCA), 18 U.S.C. § 5010(b) (repealed 1984), we do not reach the latter issue.[5]

The plain language of D.C.'s felony threats prohibition does not include any intent element. Faced with the lack of facial ambiguity as to the elements of the offense, appellant argues that this court must look behind the plain meaning of the statute to the legislative history to glean the legislature's intent and that we must interpret § 22–2307 in light of § 22–2306. As this court has noted, a statute's plain meaning does not prevail over "strong contradictory indications in the legislative history" or if the plain meaning would lead to absurd consequences. *Citizens Ass'n of Georgetown v. Zoning Comm'n of the District of Columbia,* 392 A.2d 1027, 1033 (D.C.1978) (en banc). There is "no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' " *Id.* at 1033. However, this court will "look beyond the ordinary meaning of the words of a statute only where there are persuasive reasons for doing so." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 755 (D.C.1983) (en banc).

We turn first to appellant's contention that the legislative history of the felony threats statute establishes that Congress intended extortionate intent to be an element of the offense. He relies significantly on the dissenting opinion in *Young* and a statement by a division of this court in a later case to the effect that the purpose of Congress in enacting § 22–2307 was to prohibit extortion in various forms. *Young,* 376 A.2d at 815 (Mack, J., dissenting); *Ball v. United States,* 429 A.2d 1353, 1359 (D.C. 1981) ("threats" (D.C.Code § 22–2307) not lesser included offense of "obstructing justice" (D.C.Code § 22–703(a)); no merger; conviction and concurrent sentences for charges of both offenses not double jeopardy). This court's opinion in *Ball* did not

---

**4.** D.C.Code §§ 22–2901, 22–3202, and 22–2307 (1981 and 1988 Supp.).

**5.** The appropriate focus of an eighth amendment analysis is the sentence actually imposed. *See, e.g., Solem v. Helm,* 463 U.S. 277, 290–92 and n. 16, 103 S.Ct. 3001, 3009–10 and n. 16, 77 L.Ed.2d 637 (1982).

In addition, we observe that D.C.Code § 22–2307 provides for a 20–year *maximum* sentence with no mandatory minimum; accordingly, the sentencing court was not obligated to give a sentence more severe than that available under the simple threats statute, § 22–507. Moreover, the FYCA sentence actually imposed here was one the trial court could have imposed under either the misdemeanor or the felony threats statute.

indicate that its interpretation of the legislative history of the felony threats statute was inconsistent with the majority's holding in *Young*, 429 A.2d at 1356 n. 6, 1359–60. Nonetheless, we address it in the course of disposing of appellant's argument that the legislative history supports his position.

Both the *Young* dissent and the discussion in *Ball* rely on remarks by Senator Tydings, then Chairman of the Senate District of Columbia Committee's Subcommittee on Business and Commerce, when he introduced a last-minute floor amendment to the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 921–928 (1976), 18 U.S.C. §§ 1201–1202 (1984), 42 U.S.C. §§ 3701–3796c (1977). His proposal eventually became D.C.Code §§ 22–2306 (repealed 1982) and –2307 (1988 Supp.). The court, in *Ball*, noted that Senator Tydings "stressed that the bill was designed 'to correct what appears to be a grave and damaging situation right here in Washington which threatens the commercial life of the city.'" 429 A.2d at 1359 n. 12 (quoting 114 CONG.REC. 14778 (1968)).

That Senator Tydings deplored on the floor of the Senate the behavior of "extortionists and thieves" did not necessarily reflect that intent to extort was an element of all the offenses his amendments defined. It is apparent from his remarks that Senator Tydings considered threats a concomitant of extortionate behavior, but that is not to say that extortionate intent is a necessary element of any threat prohibited by the provision that became § 22–2307. Senator Tydings said of that section that it "prohibits extortion intended to affect conduct, rather than to extract money." It is significant that he went on to state that "[i]t prohibits threats to kidnap or injure any person or damage his property, *regardless of the reason for the threat.*" 114 CONG.REC. 14778 (1968).

Because Senator Tydings was the author of the amendment, and in the absence of a conference report or remarks from the floor manager, his remarks are a significant factor in determining the intent of the legislature. We cannot, however, read them in a vacuum. In introducing his amendment, Senator Tydings noted its similarity to one being introduced in the House of Representatives by Congressman Whitener.[6] Whitener stated that his bill was the result of a request and proposed legislation from D.C. Commissioner Walter Washington to bring D.C. law into conformance with a federal statute that prohibited communication of threats across state lines, 18 U.S.C. § 875 (1988 Supp.).[7] 114 CONG.REC. 15013–15014 (1968). Tracking the language of the federal statute, the new measure as requested by the Commissioner and approved by the House of Representatives prohibited some crimes of which the intent to extort was an explicit part, and others of which it was not. It is

---

**6.** Congressman Whitener introduced the measure to the House of Representatives four days later as a bill, H.R. 17417, which the House passed without debate. 114 CONG.REC. 15014 (1968).

**7.** In setting out the federal statute, it is observed that subsections (a) and (c) do not require intent to extort:

(a) Whoever transmits in interstate or foreign commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined no more than $5,000 or imprisoned not more than twenty years, or both. (b) Whoever, *with intent to extort* from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000,

or imprisoned not more than twenty years, or both.
(c) Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
(d) Whoever, *with intent to extort* from any person, firm, association or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined not more than $500 or imprisoned not more than two years, or both.
18 U.S.C. § 875 (emphasis added).

significant that the federal statute did not make intent to extort an element of felony threats.[8] While he referred to his bill as "antiextortion legislation," 114 CONG.REC. 15012 (1968), Congressman Whitener noted with regard to the anti-threat provision that "the Commissioner included in his recommended legislation a provision specifically making it a felony ... to threaten to physically damage the property of another." 114 CONG.REC. 15013 (1968).

The most notable difference between the Whitener and Tydings versions is that the Tydings amendment made no differentiation in penalty between threat, extortion and blackmail. Nonetheless, the two measures are similar in that neither explicitly includes an intent element in the threat offense. From the House debates on the Omnibus Crime Bill as amended by the Senate, it appears that members of the House of Representatives thought that the Tydings amendment was substantively the same as the Whitener bill. *See, e.g.,* 114 CONG.REC. 16286 (1968) (remarks of Representative Machen) ("Last week the House passed a separate bill on this matter and I supported it. Therefore, since title X is the same bill, I also support it."); 114 CONG. REC. 16298 (1968) (remarks of Representative Pollock) ("This title would bring the District of Columbia code in conformance with an existing statute ... 18 U.S.C. § 875—which makes certain crimes that required an interstate connecting link or series of illegal events in the perpetration of a crime applicable to the District of Columbia

without an interstate communication. The reelected crimes are attempts to extort by any communication for release of kidnapped persons or threats to kidnap persons or threats to injure persons, property or reputations ... Maximum penalties would be $5,000 fine and 20 years imprisonment." ). The penultimate sentence of Representative Pollock's quoted statement appears ambiguous as it could be read to say that there are three kinds of attempts to extort or that there are three crimes of which attempt to extort constitutes one. His earlier reference to the federal statute establishes that the second reading is the correct one.

Given the apparent confusion between the two versions, different in form and penalty, of the threat and extortion prohibitions and the general air of urgency to pass the omnibus bill and then refine its provisions later, *see, e.g.,* 114 CONG.REC. 16275, 16281, 16283–85 (1968), it is unwarranted to depend on Senator Tydings' remarks alone to reflect the legislature's purpose in enacting the felony threats statute. Even if one assumes *arguendo* that the threats statute was designed solely to enhance the protections available to businesses against extortionists and thieves, the threats statute need not include an element of extortionate intent in order to serve that purpose. Having reviewed the legislative history, we think it accurate to say that while preventing extortion was the main purpose of the amendments in question, it was not the sole purpose. Rather, the purpose included

---

**8.** In setting forth the Whitener bill, we observe that, as with the federal statute set forth in footnote 7, the first and third subsections do not require intent to extort:

That whoever (1) transmits within the District of Columbia any communication containing any demand or request for a ransom or reward for the release of a kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; (2) *with intent to extort* from any person, firm, association, or corporation, any money or other thing of value, transmits within the District of Columbia any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; (3) transmits within the District of Co-

lumbia any communication containing any threat to kidnap any person or any threat to injure the person of another or physically damage his property, in whole or in part, shall be fined not more than $1,000 or imprisoned not more than five years, or both; or (4) *with intent to extort* from any person, firm, association, or corporation, any money or other thing of value, transmits within the District of Columbia any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined not more than $500 or imprisoned not more than two years, or both.

114 CONG.REC. 15012 (1968) (emphasis added).

broadly a prohibition against threats, extortionate or not. The legislative history relied upon by appellant does not support his interpretation strongly enough to override the plain meaning of the statutory language. There is no clear indication of a legislative purpose that is at odds with the plain meaning. *Cf. Mulky v. United States,* 451 A.2d 855, 857 (D.C.1982).

■ To address appellant's next argument, we return to our statement in *Peoples Drug Store, Inc., supra,* that we will "look beyond the ordinary meaning of the words of a statute only where there are persuasive reasons for doing so." 470 A.2d at 755. Appellant apparently perceives one "persuasive reason" in the notion that because D.C.Code §§ 22–2306 and 22–2307 were enacted together, they are, in effect, *in pari materia* and must therefore be construed together.

Appellant would misapply the doctrine of *in pari materia,* as that doctrine that does not refer primarily to coincidence of enactment. Statutory provisions *in pari materia* relate to the same subject matter or have the same purpose or object, *see, e.g., Maynard v. Thrasher,* 77 Ga.App. 316, 48 S.E.2d 471, 473 (1948); *Gillespie v. City of Maroa,* 104 Ill.App.3d 874, 60 Ill.Dec. 646, 649, 433 N.E.2d 688, 691 (1982), regardless of when they are enacted. *Applestein v. Osborne,* 156 Md. 40, 143 A. 666, 672 (1928); *Quality Clothes Shop v. Keeney,* 57 Ind.App. 500, 106 N.E. 541, 542 (1914). The comparison of statutes *in pari materia* is an aid in determining legislative intent when the language of a statute is ambiguous. *State v. Fremont Lodge of Loyal Order of Moose,* 151 Ohio St. 19, 84 N.E.2d 498, 503 (1949); *Stevens v. Linton,* 190 Tenn. 351, 229 S.W.2d 510, 512 (1950). D.C.'s felony threat prohibition is not ambiguous on its face; in fact, the explicit inclusion of the element of intent to extort in the extortion prohibition with which it was enacted suggests that the legislature knew how to specify such intent if it wished. The fact that it was enacted and

codified in tandem with an extortion provision does not establish that the two statutes address the same subject matter. Appellant would have us assume what he hopes to prove. We conclude that we need not construe the two statutes together in order to divine the meaning of the felony threats statute, § 22–2307.

We observe next that the circumstances under which the felony threats statute remains on the books today tend to undermine appellant's position. While we acknowledge that subsequent legislative actions do not carry interpretative weight equivalent to that accorded actions of the enacting body, the D.C. Council's extensive revisions to the D.C.Code following the report of the D.C.Law Revision Commission provide a guide as to the scope and application of the statute. In 1979, the Commission developed a proposal recommending reform of D.C. law relating to theft, extortion, fraud and forgery.[9] Following a series of public hearings based on that proposal, several D.C. Council members introduced a bill containing reform proposals for those areas of the law. In the resulting legislation, the Council revisited the chapter in which the felony threats statute was codified and repealed the entire chapter except for § 22–2307, which it left in place. The effect was to repeal all of the chapter's provisions dealing specifically with intent to extort, but to leave in force the felony threats provision that does not contain any reference to intent to extort. The bill included provisions to redefine the offenses of extortion and blackmail, now codified at D.C.Code §§ 22–3851 and 22–3852 (1988 Supp.).

In revising the law of extortion and blackmail in enacting the reform legislation, the Council had the benefit of this court's interpretation of § 22–2307 in *Young* and *Ball* for its consideration. While there is no mention of either case in the legislative history of the District of Columbia Theft and White Collar Crimes Act of 1982, we assume legislative aware-

---

9. The relevant proposals were contained in chapters 9 and 10 of Bill 3–226, which was enacted into law in that form.

ness of the prior judicial interpretation of statutory language, *see, e.g., In re A.B.,* 556 A.2d 645, 648 (D.C.1989) and, given the Council's opportunity to revise the felony threats statute and confirm its supposed status as a member of the extortion family, we conclude that the D.C. Council's interpretation of § 22–2307 comports with that of this court in *Young* in that we declined to read in the element of extortionate intent.

Appellant also argues that an interpretation of § 22–2307 without the element of extortionate intent should be disfavored as it would then be redundant of § 22–507. The Supreme Court has pointed out, however, that redundancy in criminal enactments is permissible. *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). As we have pointed out, the D.C. Council apparently did not consider the statutes unduly redundant as it left both in place after a revision effort with the stated goal of eliminating redundant provisions in the D.C.Code. Report of the Committee on the Judiciary, District of Columbia Council Bill No. 4–144 [D.C.Law 4–164], the "District of Columbia Theft and White Collar Crime Act of 1982," at 2, 4 (June 1, 1982). Accordingly, this argument for a construction of the statute favorable to appellant also fails.

In short, having studied the language of the felony threats statute, considered whether other statutes might illuminate its meaning, reviewed the legislative history, and weighed appellant's contentions concerning statutory construction, we remain of the view that intent to extort is not an element of the felony threats statute, § 22–2307, and decline to overrule our holding in *Young.*

*Affirmed.*

MACK, Associate Judge, Retired, dissenting, with whom NEWMAN, Associate Judge, joins:

Today our court, in one "fell swoop" dashes the hopes of Mr. Holt, and awards

me the dubious distinction of having my *dissent* in another case overruled. *See United States v. Young,* 376 A.2d 809 (D.C.1977) (Mack, J., dissenting). Thus our en banc majority in this (the *Holt*) case, having convened ostensibly to consider the validity of *United States v. Young* (which the division in *Holt* questioned on the facts but nevertheless thought controlling), in effect has not merely reaffirmed the majority holding in *Young* but rather added new legal dimensions to buttress the questionable holding of *Young.*[1]

The division in *Young* reversed an order of the trial court which had dismissed an indictment brought under D.C.Code § 22–2307, for its failure to allege "specific intent to extort." The trial court found that this felony statute, if interpreted to prohibit no more egregious conduct than that of the misdemeanor statute (D.C.Code § 22–507), raised constitutional infirmities growing out of disparate punishments, and gave the prosecutor unbridled discretion. In reversing the trial court, our *Young* division looked only to the plain language of § 22–507—thus declining to even consider legislative history. Today, however, the en banc majority, in a rather reverse analysis, milks all that it can, and more, from that legislative history in refusing to overrule *Young* and in affirming Mr. Holt's conviction.

The problem here is that the legislative history does not support, but rather negates, the majority's position. Thus having examined at length the "Tydings amendment" in the Senate and the "Whitener bill" in the House—with the repeated references to *extortion* or *commerce* or *the protection of businesses,* the majority tells us that the legislative history relied upon by Mr. Holt (whose only crime was to say "I'm going to get you bitch") "does not support his interpretation strong enough to override the plain meaning of the statutory language."

The net result of the majority's analysis is to create an "absurd result." *Citizens Association of Georgetown v. Zoning*

---

1. The majority also takes pains to weaken another division opinion, *Ball v. United States,* 429

A.2d 1353 (D.C.1981), which had also called into question the validity of *Young.*

*Commission of the District of Columbia,* 392 A.2d 1027, 1033 (D.C.1978) (en banc). The attempt to share this absurdity with the District of Columbia Council (because of a revision of the D.C.Code) is, I am sure, unwarranted and unwanted.

I respectfully dissent.[2]

## APPENDIX

MACK, Associate Judge, concurring:

The facts of the instant case may more eloquently than any argument I could ever make why *United States v. Young,* 376 A.2d 809 (D.C.1977) is wrong. An accused who says, "I'm gonna get you, bitch" may face, at the discretion of the prosecutor, a maximum penalty of twenty years imprisonment, while another who says the same thing may face six months incarceration. *See* D.C.Code § 22–507 (1981).[1] At the risk of being a bore, however, I write separately to say why this court should take another look at *Young.*

Viewed in isolation, the "plain language" of § 22–2307 may, as the majority in *Young* concludes, support the view that the statute was not intended only to prohibit threats to extort. But this court has never before sanctioned reliance solely on "plain language" in the presence of compelling evidence of legislative intent to the contrary. " '*The literal wording of the statute is a primary index but not the sole index to legislative intent. It cannot prevail over strong contrary indications in*

*the legislative history or so as to command an absurd result.'* " *Citizens Association of Georgetown v. Zoning Commission of the District of Columbia,* 392 A.2d 1027, 1033 (D.C.1978) (en banc) (quoting *Lange v. United States,* 143 U.S.App.D.C. 305, 307–08, 443 F.2d 720, 722–23 (1971) (footnotes omitted; emphasis added)). *See also Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 65 (1980) (quoting *District of Columbia National Bank v. District of Columbia,* 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (1965) (citations omitted) (" '[S]ince the judicial function is to ascertain the legislative intention the Court may properly exercise that function with recourse to the legislative history, and may depart from the literal meaning of the words when at variance with the intention of the legislature as revealed by legislative history.' ")); *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (en banc) (A legislative provision warrants closer scrutiny when its language has only superficial clarity, fails to embody legislative intent, or yields absurd or unjust results.)[2]

The legislative history of § 22–2307 makes it abundantly clear that the statute was meant to proscribe threats to extort. As the dissent in *Young* explains, §§ 22–2306 and 22–2307 of the D.C.Code were enacted into law as Title X of the Omnibus Crime Control and Safe Streets Act of 1968 by way of an amendment introduced by

---

**2.** I append hereto (for purposes of ease in referring to the legislative history of § 22–2307), the concurring opinion of the division in this case—a decision vacated at the time of the granting of en banc petition.

**1.** D.C.Code § 22–507 provides:

Whoever is convicted in the District of threats to do bodily harm shall be fined not more than $500 or imprisoned not more than 6 months, or both, and, in addition thereto or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year.

I note that in *United States v. Baish,* 460 A.2d 38 (D.C.1983), a prosecution was brought under § 22–507 where the complaining witness had received more than forty telephone threats including threats to kill and threats to use a bomb. The government cites *Baish* for authority that *Young* is good law, but also cites *Baish*

for the purpose of defining the elements of the misdemeanor—in this instance the definition of the word "threat" for jurisdictional purposes.

**2.** *See also* SUTHERLAND ON STATUTORY CONSTRUCTION, § 46.07 at 110 (4th ed. 1984) ("[I]t is clear that if the literal import of the text of an act is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results, the words of the statute will be modified to agree with the intention of the legislature.... The intention prevails over the letter, and the letter must if possible be read to conform to the spirit of the act. While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words." (footnotes omitted)).

Senator Tydings, then Chairman of the Senate District of Columbia Committee's Subcommittee on Business and Commerce. The wording of §§ 22–2306 and 22–2307 is identical to that of the amendment which was introduced by Senator Tydings with the following explanation:

MR. TYDINGS. Mr. President, it is essential for the Senate—while it considers a national crime bill—to correct what appears to be a grave and damaging situation right here in Washington which threatens the commercial life of the city.

Every day reports come in, not only to me, but to my colleague from Maryland and the senators from Virginia, of Washington merchants, and Marylanders and Virginians who own stores in the District of Columbia, who are being threatened and abused by *extortionists* and thieves. Every day, thugs walk into stores and demand or just take merchandise. And if the owner tries to stop them, they threaten to burn down his store. We hear of threats to merchants that if they attempt to rebuild stores burned out in the recent riots, they will be destroyed again. We hear reports of shakedowns and the protection racket here in the District of Columbia.

My amendment, which is similar to the one introduced in the House of Representatives by Mr. WHITENER and Mr. McMILLAN, would make extortion and transmission of threats to persons and property a felony punishable by $5,000 or 20 year's imprisonment, or both.

There is no general prohibition of *extortion* in the District of Columbia Code today. The only Code provision dealing specifically with extortion is a 1902 law, Section 22–1302 of the District of Columbia Code, dealing with false recordation of land records with intent to defraud. Section 22–2305, concerning blackmail, includes only threats to publish disgraceful accusations for the purpose of extorting funds or influencing conduct. Not covered are threats of injury to person or damage to property.

The amendment would create a new title V, making the present reversability provision title VI.

*The extortion title has two sections.* The first section 1001 [§ 22–2306] prohibits *extortion* for money or other things of value. The second section, 1002 [§ 22–2307], prohibits *threats designed to influence conduct,* such as threats to burn out a merchant if he attempts to locate his business in a certain area. These threats must be convincing threats, clearly believable and intended to be acted upon, against particular persons. Generalized or vague threats are not enough.

Specifically, section 1001 prohibits three kinds of action, when they are perpetrated "with intent to extort from any person, firm, association or corporation, any money or thing of value": First, any demand for ransom for a kidnapped person; second, any threat to kidnap or any threat to injure any person; and third, any threat to injure the property or reputation of any person.

*Section 1002* [§ 22–2307] prohibits extortion intended to affect conduct, rather than to extract money. It prohibits threats to kidnap or injure any person or damage his property, regardless of the reason for the threat.

All offenses would be punishable by up to $5,000 fine and 20 years' imprisonment.

As chairman of the Senate District Committee's Subcommittee on Business and Commerce, I recently held hearings on the riot damage and the District's rebuilding plans. I know the importance of this bill. Whether these reports of extortion are true is not the point. The fact is there is no general law on extortion in the District of Columbia at all now. We should enact such a law in any case. But it is particularly urgent now to give citizens and businesses in the District of Columbia the kind of assurance they need that the law will protect them against *extortion.*

114 CONG.REC. 14,778 (1968) (emphasis added).

In addition to this highly persuasive evidence that § 22–2307 was intended to deal

with threats to extort, there are two additional factors which buttress this conclusion. First, as the dissent in *Young* points out there already exists a statute proscribing "simple" threats. Second, the fact that the two Code sections, §§ 22–2306 and 22–2307, carry identical penalties is a strong indication that § 22–2307, like § 22–2306, was intended to combat extortion. *Young, supra,* 376 A.2d at 816.[3]

It should be noted further that this is not the first time that the majority's holding in *Young* has been called into question. In *Ball v. United States,* 429 A.2d 1353, 1359 (D.C.1981), this court explicitly stated that § 22–2307 "was enacted to protect the private citizens and businesses of the District of Columbia against extortion" (footnote omitted). The court quotes the legislative history quoted *infra,* stating "[e]ven though we have said that § 22–2307 does not require proof of specific intent to extort, *United States v. Young,* [*supra*], the express legislative concern to prohibit extortion and like conduct ... cannot be ignored." *Ball v. United States, supra,* 429 A.2d at 1359–60 (footnote omitted).

This court's interpretation in *Young* of § 22–2307 also produces absurd results. Under *Young,* threats to injure are punished far more severely than actual infliction of injury. For example, while assaulting with intent to kill, rape, or rob can result in a sentence of not more than fifteen years, merely threatening to commit those acts carries a potential twenty-year prison term. *See* D.C.Code § 22–501 (1981). Similarly, the twenty-year potential sentence for making threats should be compared with the ten-year potential sentence for arson (D.C.Code § 22–401 (1981)); the ten-year potential sentence for destruction of property worth more than $200 (D.C. Code § 22–403 (1981); and the ten-year potential sentence for mayhem or malicious disfigurement (D.C.Code § 22–506 (1981)). *See Young, supra,* 376 A.2d at 816 nn. 7 & 8 (Mack, J., dissenting).[4]

" '[T]he literal meaning of [the] statute will not be followed when it produces absurd results.' " *Varela v. Hi–Lo Powered Stirrups, Inc., supra,* 424 A.2d at 65 (quoting *District of Columbia National Bank v. District of Columbia, supra,* 121 U.S. App.D.C. at 198, 348 F.2d at 810. The absurdity of results generated by reading § 22–2307 to prohibit threats other than threats to extort strongly militates in favor of going beyond the "plain language" of § 22–2307 to consider the highly persuasive legislative history of the statute.

Interpreting the statute to encompass the threatening conduct at issue in the instant case not only produces absurd results, but such a reading may render the statute unconstitutional as applied. The fact that there exists a statute supposedly prohibiting identical conduct but providing

**3.** Certainly the codifiers of our Code, who placed these provisions in the chapter "Libel–Blackmail–Extortion," read them as I do.

**4.** Courts have pointed out in the past that it would be ludicrous to punish a person more severely for an inchoate offense than if the offense had been completed. For example, in *United States v. Pearson,* 202 A.2d 392 (D.C. 1964), the court found itself faced with the situation where a defendant was subject to a greater penalty for attempted petit larceny than for the completed act of petit larceny. The court resolved the issue by ruling that after reading the two sections together, it followed that the maximum penalty for the attempted petit larceny could not be greater than the maximum penalty that could be given for the completed offense of petit larceny.

The court in *Pearson* cited an early case for the proposition that

"If an unexecuted attempt to steal could be punished with heavier penalties than larceny itself, such a construction cannot be just as it would impute to the legislature an intention inconsistent with all reasons and justice, and contrary to the spirit and views of all their Acts, whose declared objects are to proportion punishment to the crime and to render all punishments moderate but certain, without regard to the quality of the person."

\*　　\*　　\*　　\*　　\*　　\*

"It never could be the intention of the legislature to punish with greater severity an abortive attempt than a successful issue or leave it in the power of the court to do so."

*Id.* at 393 (quoting *Rogers v. Commonwealth,* 5 Serg. and R. 463 (Pa.1819)). *See also Buzzard v. Commonwealth,* 134 Va. 641, 114 S.E. 664 (1922), in which the court ruled that a man could not be punished more severely for attempted rape than for completed rape.

a far more lenient penalty (namely, only six months incarceration and a $500 fine, *see* D.C.Code § 22–507, *see supra* note 1) creates due process and equal protection problems. The statute may also be rendered unconstitutional as applied under the Eighth Amendment's prohibition against cruel and unusual punishment.[5]

Under the Supreme Court's decision in *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983), the final clause of the Eighth Amendment "prohibits not only barbaric punishments, but also [prison] sentences that are disproportionate to the crime committed." The Court has applied this principle to invalidate a ninety-day sentence for the crime of being "addicted to the use of narcotics" even though this punishment is neither cruel nor unusual in the abstract. *Robinson v. California*, 370 U.S. 660, 667, 82 S.Ct. 1417, 1420–21, 8 L.Ed.2d 758 (1962). The Court reasoned that "the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Id.*[6] The principle of proportionality—that is, that the punishment should fit the crime—is one of the most basic tenets of our system of jurisprudence.[7] The sentence given appellee in the instant case is out of all proportion to the offense committed.[8] Receiving a six-year prison term for uttering the words which threaten some form of bodily harm, without more, offends our basic sense of what is just and fair; such a severe punishment for the relatively minor offense at issue here shocks the conscience and may well constitute a violation of the Eighth Amendment.[9]

---

5. The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

6. In the case of *Solem v. Helm, supra,* the defendant was convicted of passing a bad check for $100, and, on the basis of six prior convictions for similar and alcohol-related offenses, was sentenced under a recidivist statute to life imprisonment without possibility of parole. In finding this sentence to be significantly disproportionate, the Court relied upon the nonviolent nature of the crime, the small amount of the check, the fact that more serious crimes were treated less severely in South Dakota, and the fact that only one other state even authorized a penalty of this magnitude for similar crimes and recidivism. The Court distinguished the case of *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which had upheld a life sentence on comparable facts, on the ground that the *Rummel* sentence included the possibility of parole.

7. *See* discussion of proportionality in "Penal Philosophy: A Return to 'Just Deserts,'" by Professor Marvin E. Wolfgang, *The Key Reporter*, Vol. 52 No. 1, at 1–2 (published by United Chapters of Phi Beta Kappa).

8. *Compare Nelson v. United States*, 479 A.2d 340 (D.C.1984), where appellant pled guilty to three offenses (petit larceny, possession of heroin, and attempted petit larceny) and was sentenced to consecutive terms of imprisonment of three years, two years, and one year. Execution of the sentence was suspended and appellant was placed on probation for three years. Subsequent to sentencing, appellant was convicted of unlawful entry, and the court revoked appellant's probation. Appellant argued on appeal that the imposition of the original punishment constituted cruel and unusual punishment. The court disagreed, citing the fact that appellant had committed three separate offenses and had a lengthy criminal record.

9. The Court in *Solem v. Helm, supra*, 463 U.S. at 290–92, 103 S.Ct. at 3009–11, used an analytical framework containing three broad criteria in deciding whether punishment was cruel and unusual. First, it made a judgment as to the gravity of the offense and the relative harshness of the penalty. Comparisons were drawn in light of the harm caused or threatened to the victim or to society and the culpability of the offender. *Id.* at 292–94, 103 S.Ct. at 3010–12. Second, the Court examined sentences imposed on other criminals in the same jurisdiction and determined whether more serious crimes were subject to the same or lesser penalties. Finally, the Court considered the sentence imposed for commission of the same crimes in other jurisdictions.

I do not undertake here to apply this three-pronged analysis to the facts in the instant case. Rather, I suggest that serious constitutional difficulties of equal protection, due process, and cruel and unusual punishment are generated by application of the court's interpretation of § 22–2307 in *Young* to the case before us. While these constitutional problems are further reason to interpret § 22–2307 in line with clear legislative history indicating the section was intended to prohibit threats to extort, I leave consideration of the constitutional issues for the en banc court should a petition for rehearing en banc be filed and granted.

It is a canon of statutory interpretation that "the fact that one among alternative constructions would involve serious constitutional difficulties is reason to reject that interpretation in favor of another." SUTHERLAND ON STATUTORY CONSTRUCTION, "Constitutional Considerations," § 45.11 at 46 (4th ed. 1984). Applying § 22–2307 to the kind of conduct engaged in by appellant generates serious constitutional problems. When these constitutional infirmities are combined with legislative history that could not be more clear in indicating that § 22–2307 was intended to prohibit threats of extortion, it is simply untenable to reach the result mandated by *Young*. Yet given the explicit holding of *Young* this division is bound thereby. I suggest that appellant may wish to file a petition for rehearing en banc so that the holding of *Young* may be exposed to reconsideration in the context of the instant case.